LAWRENCE G. WASDEN
Attorney General

STEVEN OLSEN
Deputy Attorney General
Chief, Civil Litigation Division
MICHAEL S. GILMORE
ISB #1625; mike.gilmore@ag.idaho.gov
CLAY R. SMITH
ISB #6385; clay.smith@ag.idaho.gov
Deputy Attorneys General
P.O. Box 83720
Boise, Idaho 83720-0010
Telephone:  (208) 334-2400
Facsimile:  (208) 854-8072

DAVID F. HENSLEY
ISB # 6600; dhensley@gov.idaho.gov
Counsel to the Governor
Office of the Governor
P.O. Box 83720
Boise, Idaho 83720-0034
Telephone:  (208) 334-2100
Facsimile:  (208) 334-3454

*Attorneys for Defendant C.L. Otter*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WENDY KNOX and RICHARD DOTSON, | ) ) ) |
| | Case No. 4:09-CV-00162-BLW |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| | MEMORANDUM IN SUPPORT OF DEFENDANT C.L. OTTER'S MOTION TO DISMISS AMENDED COMPLAINT (DOC. 4) |
| UNITED STATES DEPARTMENT OF INTERIOR, KENNETH LEE SALAZAR, Secretary of the Interior, and C. L. OTTER, Governor of the State of Idaho, | ) ) ) ) ) |
| Defendants. | ) ) ) |

MEMORANDUM IN SUPPORT OF DEFENDANT C.L. OTTER´S MOTION TO DISMISS AMENDED COMPLAINT (DOC. 4)

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

RELEVANT FACTUAL BACKGROUND .................................................................... 2

    I.    IGRA AND ITS APPLICATION IN IDAHO ........................................... 2

    II.   STATE COURT LITIGATION OVER THE VALIDITY OF THE TRIBAL
          GAMING INITIATIVE AND ITS LATER CODIFICATION ................................. 7

APPLICABLE RULE 12 STANDARDS ........................................................................ 9

ARGUMENT ..................................................................................................................... 10

    I.    IGRA'S DETAILED REMEDIAL SCHEME FORECLOSES NOT ONLY
          IMPLYING A PRIVATE RIGHT OF ACTION TO ENFORCE ITS TERMS
          BUT ALSO PROSPECTIVE RELIEF UNDER *EX PARTE YOUNG* .................... 10

    II.   RELIEF REDRESSING PLAINTIFFS' ALLEGED INJURY CANNOT BE
          ENTERED IN THE ABSENCE OF THE GAMING TRIBES' JOINDER AS
          DEFENDANTS, AND THEIR JOINDER IS PRECLUDED BY TRIBAL
          SOVEREIGN IMMUNITY ................................................................................. 13

CONCLUSION ................................................................................................................... 20

## <u>TABLE OF AUTHORITY</u>

## CASES

*American Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015 (9th Cir. 2002)............................ 14-19

*Artichoke Joe's California Grand Casino v. Norton,* 353 F.3d 712 (9th Cir. 2003)...............13, 19

*Barron v. Reich*, 13 F.3d 1370 (9th Cir. 1994) ..............................................................10

*Branch v. Tunnell*, 14 F.3d 449 (9th Cir. 1994)...........................................................10

*Cabazon Band of Mission Indians v. Wilson*, 124 F.3d 1050 (9th Cir. 1997) ..............................13

*Cachil Dehe Band of Wintun Indians v. California*, 547 F.3d 962 (9th Cir. 2008),
cert. denied, 129 S. Ct. 1987 (2009)...................................................... …………...18

*Chilkat Indian Vill. v. Johnson,* 870 F.2d 1469 (9th Cir. 1989) ....................................10

*Coeur d'Alene Tribe v. Idaho*, 842 F. Supp. 1268 (1994), *aff'd per memo*, 51 F.3d 876
(9th Cir. 1996)..........................................................................................................4

*Colwell v. DHSS*, 558 F.3d 1112 (9th Cir. 2009) ........................................................10

*Coyote Valley Band of Pomo Indians v. California,* 331 F.3d 1094 (9th Cir. 2003)....................13

*Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.,*
276 F.3d 1150 (9th Cir. 2002) ......................................................................................18

*Ex parte Young*, 209 U.S. 123 (1908)...........................................................2, 11-13

*Florida v. Seminole Tribe*, 181 F.3d 1237 (11th Cir. 1999) ........................................11

*Fort Independence Cmty. v. California*, No. CIV. S-08-432 LKK/KJM,
2009 WL 5206797 (E.D. Cal. Dec. 24, 2009)..............................................................13

*Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)...............................10

*Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103 (1989) ...............................13

*Idaho v. Shoshone-Bannock Tribes*, 465 F.3d 1095 (9th Cir. 2006) .......................................2, 6, 9

*In re Digimarc Corp. Derivative Litigation,* 549 F.3d 1223 (9th Cir. 2008)................................11

*In re Petition to Determine Constitutionality of Idaho Code § 67-429B
and 67-429C*, No. 29226 (Idaho S. Ct. June 2, 2003) ....................................................7

*In re Petition to Determine Constitutionality of Indian Gaming Initiative*, 137 Idaho 798,
53 P.3d 1217 (2002)................................................................................................7

*In re Sac & Fox Tribe of Miss. In Iowa/Meskwaki Casino Litigation*, 340 F.3d 749
(8th Cir. 2003)...........................................................................................................11

*Hal Roach Studios, Inc. v. Richard Feiner and Co.*, 896 F.2d 1542 (9th Cir. 1990) ...................10

*Hartman v. Kickapoo Tribe Gaming Comm'n*, 319 F.3d 1230 (10th Cir. 2003) .........................11

*Hein v. Capitan Grande Band of Dieguendo Mission Indians*, 201 F.3d 1256
(9th Cir. 2000)................................................................................................10, 11

*Johnson v. Rodriguez*, 943 F.2d 104 (1st Cir. 1991) ....................................................11

*Kiowa Tribe v. Mfg. Techns., Inc.*, 523 U.S. 751 (1998)..............................................13

*Keweenaw Bay Indian Cmty. v. United States*, 136 F.3d 469 (6th Cir. 1998).............................13

*Knox v. State ex rel. Otter*, 223 P.3d 266 (Idaho 2009)........................................1, 7, 9

*Lance v. Coffman*, 549 U.S. 437 (2007) .....................................................................20

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2002)..............................................10

*Mack v. S. Bay Beer Distrib., Inc.*, 798 F.2d 1279 (9th Cir. 1986).....................................10

*McShan v. Sherrill*, 283 F.2d 462 (9th Cir. 1960) .......................................................10

*Morley v. Walker*, 175 F.3d 756 (9th Cir. 1999)..........................................................10

*Mudarri v. State*, 196 P.3d 153 (Wash. App. Ct. 2008)................................................................18
*Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*,
    498 U.S. 505 (1991)................................................................................................................13
*Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546 (10th Cir. 1997) ....................................................18
*Republic of Philippines v. Pimentel*, 128 S. Ct. 2180 (2008) ...........................................14, 15, 19
*Seminole Tribe v. Florida*, 517 U.S. 44 (1996) ................................................................2, 3, 11, 12
*Sidney v. Zah*, 718 F.2d 1453 (9th Cir. 1983)...............................................................................19
*Srader v. Verant*, 964 P.2d 82 (N.M. 1998)................................................................................18
*Upstate Citizens for Equality v. Salazar*, No 5:08-CV-0633 (LEK/DEP),
    2010 WL 827090 (N.D.N.Y. Mar. 4, 2010) ........................................................................11
*Washington v. Daley*, 173 F.3d 1158 (9th Cir. 1999) ..................................................................18
*Wilbur v. Locke*, 423 F.3d 1101 (9th Cir. 2005) .............................................................. 14-17, 19
*Williams v. United Airlines, Inc.,* 500 F.3d 1019 (9th Cir. 2007)..................................................10
*Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921 (7th Cir.).......................................................12, 13
*Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541 (4th Cir. 2006) ....................................14, 19

## CONSTITUTIONAL PROVISIONS

Idaho Const. art. III, § 20.......................................................................................... 1, 6-8, 19
U.S. Const. art. VI, cl. 2...................................................................................................1

## FEDERAL REGISTER

58 Fed. Reg. 8478 (Feb. 12, 1993) ....................................................................................4
58 Fed. Reg. 59,926 (Nov. 10, 1993)..................................................................................4
60 Fed. Reg. 57,246 (Nov. 14, 1995)..................................................................................4
65 Fed. Reg. 54,541 (Sept. 8, 2000) ..................................................................................4
68 Fed. Reg. 1068 (Jan. 8, 2003) .......................................................................................4

## FEDERAL STATUTES

5 U.S.C. §§ 701-706................................................................................ ...................1, 11
15 U.S.C. § 1175................................................................................................................1
15 U.S.C. §§ 1176, 1177...................................................................................................10
25 U.S.C. § 2501................................................................................................................1
25 U.S.C. § 2510(d)(1)(B).................................................................................................19
25 U.S.C. § 2510(d)(6).....................................................................................................10
25 U.S.C. § 2510(d)(8)(A)..................................................................................................1
25 U.S.C. § 2701(4) & (5) ................................................................................................13
25 U.S.C. § 2703(4).........................................................................................................3
25 U.S.C. § 2703(6)-(8).....................................................................................................3
25 U.S.C. § 2710(B) .........................................................................................................3
25 U.S.C. § 2710(d)(1)(B) ......................................................................................4, 11, 13
25 U.S.C. § 2710(d)(3)(C)(v) ...........................................................................................12
25 U.S.C. § 2710(d)(7)(3)(A) ...........................................................................................12
25 U.S.C. § 2710(d)(7)(A) .............................................................................................2, 4

25 U.S.C. § 2710(d)(7)(A)(i) .................................................................................11
25 U.S.C. § 2710(d)(7)(A)(ii) ...........................................................................12, 13
25 U.S.C. § 2710(d)(7)(B)(vii) ..............................................................................3
25 U.S.C. § 2710(d)(8) .......................................................................................3,13
25 U.S.C. § 2710(d)(8)(A) .....................................................................................18
25 U.S.C. § 2710(d)(8)(B)(i) .............................................................................3, 18
25 U.S.C. § 2710(a)(b)(d) ......................................................................................3
25 U.S.C. § 2721 ....................................................................................................1
28 U.S.C. § 1331 ....................................................................................................1
42 U.S.C. § 1983 ..................................................................................................13

## IDAHO STATUTES AND SESSION LAWS

Idaho Code § 18-3808 .............................................................................................8
Idaho Code § 18-3810 .............................................................................................8
Idaho Code § 67-429A .............................................................................................4
Idaho Code § 67-429A(3) .........................................................................................4
Idaho Code § 67-429B ....................................................... 1, 4, 5, 7-9, 11, 18, 19
Idaho Code § 67-429C ................................................................ 1, 4-9, 11, 18, 19
Idaho Code § 67-429C(1)(b)-(c) ...........................................................................5,6
Idaho Code § 67-429C(2) .........................................................................................5
1993 Idaho Sess. Laws 367 ....................................................................................4
1993 Idaho Sess. Laws 408 ....................................................................................4
2000 Idaho Sess. Laws 220 ....................................................................................4

## REGULATIONS

25 C.F.R. § 502.7 ....................................................................................................3
25 C.F.R. § 502.8 ....................................................................................................3

## RULES OF COURT

Fed. R. Civ. P. 12 .......................................................................................... passim
Fed. R. Civ. P. 19 .............................................................................................2, 13
Fed. R. Civ. P. 56 ..................................................................................................10
I.R.C.P. 12 ..............................................................................................................8

## OTHER

Matthew L.M. Fletcher, *The Comparative Rights of Indispensable Sovereigns*, 40 Gonz. L. Rev.
1 (2004-2005)........................................................................................................15

## INTRODUCTION

The complaint (Doc. 1) was filed in April 2009 but not served upon Defendant C.L. Otter ("Governor Otter") until February 4, 2010.  The action itself was stayed in June 2009 at Plaintiffs' request (Doc. 2) to allow resolution by the Idaho Supreme Court of an appeal which they initiated from a state district court judgment dismissing their challenge under Article III, Section 20 of the Idaho Constitution to Idaho Code §§ 67-429B and -429C.  Doc. 3.  That court affirmed the judgment in an opinion issued on November 27, 2009, and denied Plaintiffs' rehearing request on January 8, 2010.  *Knox v. State ex rel. Otter*, 223 P.3d 266 (Idaho 2009) (Doc. 8-14).  The amended complaint (Doc. 4) replicates the original pleading with the addition of a new paragraph (¶ 18) and a paragraph-numbering error (¶ 25).

The present suit seeks to invalidate approval by the Secretary of the Interior ("Secretary") of four tribal-state compacts "and amendments thereto" entered into under the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2501-2721; to declare gaming under those compacts in violation of IGRA and the Johnson Act, 15 U.S.C. § 1175; and to "rescind[]" and "void[]" the compacts themselves.  Doc. 4 WHEREFORE ¶¶ 1, 3.  It seeks the same declaratory relief, including rescinding and voiding the compacts, against Governor Otter. Doc. 4 WHEREFORE ¶¶ 2, 3.  Plaintiffs assert subject-matter jurisdiction under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, as to the Federal Defendants and under 28 U.S.C. § 1331 and as to all Defendants.  Doc. 4 ¶¶ 2, 3.

The State of Idaho entered into the challenged compacts with the Coeur d'Alene Tribe, the Kootenai Tribe, and the Nez Perce Tribe and the Shoshone-Bannock Tribes ("SBT").  Doc. 4 ¶ 13.  The Secretary approved amendments to the compacts under 25 U.S.C. § 2510(d)(8)(A) for the first three tribes (collectively "northern Tribes") authorizing the form of machine gaming

identified in Idaho Code § 67-429B in January 2003.  Doc. 4 ¶¶ 19-20.  Plaintiffs do not allege that the SBT submitted any amendments to its compact with Idaho for secretarial approval but instead state that, following the Court of Appeals' opinion in *Idaho v. Shoshone-Bannock Tribes*, 465 F.3d 1095 (9th Cir. 2006), "both parties to the SBT Compact have either expressly or implicitly agreed that the Compact has been . . . amended either by operation of the 'most favored nations' clause or by the Ninth Circuit's decision."  Doc. 4 ¶ 21.  It then asserts that "[i]n either case, by failing to approve or disapprove the amendment to the SBT Compact within 45 days, the Secretary is deemed to have approved the amendment, but only to the extent it is consistent with IGRA."  *Id.* ¶ 22.

The amended complaint should be dismissed against Governor Otter under Fed. R. Civ. P. 12(b)(1) and (7).  *First*, prospective relief against him under *Ex parte Young*, 209 U.S. 123 (1908), is unavailable with respect to the inconsistency between the several compacts and IGRA requirements.  Even if the statute purported to create a private right of action generally—which it does not—*Seminole Tribe v. Florida*, 517 U.S. 44 (1996), precludes *Young*-based relief against Governor Otter.  *Second*, the SBT and the northern Tribes are required to be joined as defendants under Fed. R. Civ. P. 19(a) because of their party status to the challenged tribal-state compacts, but they possess immunity from suit by Plaintiffs.  This action cannot proceed "in equity and good conscience" under Fed. R. Civ. P. 19(b) because of the Tribes' immunity and the potential prejudice to their interests if the compacts were invalidated.

## RELEVANT FACTUAL BACKGROUND

## I.      IGRA AND ITS APPLICATION IN IDAHO

Resolution of this motion turns in large measure on the provisions of IGRA and the statute's application to the four Tribes with "Indian lands" located in Idaho on which class III

gaming under IGRA is conducted pursuant to a tribal-state compact.  This Court is familiar with much, if not all, of those elements and their application in Idaho.  *See Shoshone-Bannock Tribes v. Idaho*, No. CV-01-052-E-BLW (D. Idaho); *Idaho v. Shoshone-Bannock Tribes*, No. CV-01-171-E-BLW (D. Idaho).  A brief summary of IGRA's core provisions and that application nevertheless may be helpful.

Congress enacted IGRA in 1988 to regulate gaming by federally recognized tribes on "Indian lands."  Those lands include Indian reservations. 25 U.S.C. § 2703(4).  IGRA separates gaming into three classes and imposes differing regulatory requirements as to each.  *Id.* §§ 2703(6)-(8), § 2710(a), (b) & (d); *see Seminole Tribe*, 517 U.S. at 48-50 (summarizing IGRA's regulatory scheme).  "Class III gaming" is a residual category for all gambling activity not encompassed by the class I and class II gaming categories.  25 U.S.C. § 2703(8).  Class III gaming includes lotteries or electronic facsimiles of lotteries and most forms of machine-related gambling, including slot machines and more modern electronic or electromechanical facsimiles of any game of chance.  *See, e.g.*, 25 C.F.R. §§ 502.7, 502.8 (National Indian Gaming Commission ("NIGC") regulations defining, respectively, an "electronic, computer or other technologic aid" deemed part of class II gaming and an "electronic or electromechanical facsimile" deemed class III gaming).

IGRA allows class III gaming to be conducted only pursuant to a tribal-state compact affirmatively approved by the Secretary, pursuant to a tribal-state compact not disapproved by the Secretary within 45 days of submission for approval, or pursuant to "procedures" adopted by the Secretary under circumstances that have not occurred in Idaho.  25 U.S.C. §§ 2710(d)(7)(B)(vii) & 2710(d)(8).  The Secretary may disapprove a compact for several reasons, including a determination that the agreement violates a provision of IGRA.  *Id.*

§ 2710(d)(8)(B)(i).  The statute restricts class III gaming activities, *inter alia*, to those which are "located in a State that permits such gaming for any purpose by any person, organization, or entity."  *Id.* § 2710(d)(1)(B).  Jurisdiction over civil actions seeking to address alleged IGRA violations is limited to several species of claims by States, tribes and the United States.  *Id.* § 2710(d)(7)(A).

Between 1992 and 2000, Idaho Governors entered into class III gaming compacts on the State's behalf with four of the five Idaho tribes: the Coeur d'Alene Tribe, the Kootenai Tribe, the Nez Perce Tribe, and the SBT.[1]  Each compact was approved affirmatively by the Secretary.  *See* 58 Fed. Reg. 8478 (Feb. 12, 1993) (Coeur d'Alene Tribe compact); 58 Fed. Reg. 59,926 (Nov. 10, 1993) (Kootenai Tribe compact); 60 Fed. Reg. 57,246 (Nov. 14, 1995) (Nez Perce Tribe compact); 65 Fed. Reg. 54,541 (Sept. 8, 2000) (SBT compact).  The Secretary approved compact modifications in 2003 when the northern Tribes exercised their rights under the voter-approved 2002 Tribal Gaming Initiative (codified as Idaho Code §§ 67-429B and -429C), which did not require further gubernatorial or legislative action, following submissions to the Idaho Secretary of State in accordance with the Initiative's requirements.  68 Fed. Reg. 1068 (Jan. 8, 2003) (Coeur d'Alene Tribe compact addendum); 68 Fed. Reg. 1068 (Jan. 8, 2003) (Kootenai Tribe compact amendment); 68 Fed. Reg. 1068 (Jan. 8, 2003) (Nez Perce Tribe compact addendum approval).

---

[1] Section § 67-429A, Idaho Code, originally enacted in 1993 (1993 Idaho Sess. Laws ch. 408), authorizes the Governor to represent the State in such negotiations but imposes several limits within which that authority must be exercised.  The SBT compact, however, was ratified by a separate statute that also waived Idaho's immunity under the Eleventh Amendment to the United States Constitution with respect to litigation contemplated under the compact.  2000 Idaho Sess. Laws ch. 220.  The Idaho Legislature had enacted a similar waiver for earlier compact-related litigation with the Coeur d'Alene Tribe.  1993 Idaho Sess. Laws ch. 367; *see Coeur d'Alene Tribe v. Idaho*, 842 F. Supp. 1268 (D. Idaho 1994), *aff'd per memo.*, 51 F.3d 876 (9th Cir. 1996).

In relevant part, § 67-429B authorizes the use of "tribal video gaming machines" by an Indian tribe if specifically allowed under a tribal-state compact and if compliant with certain technical criteria identified in subsection (1). It further declares in subsection (2) that a § 67-429B-authorized machine "is not a slot machine or an electronic or electromechanical imitation or simulation of any form of casino gambling" under Idaho law. Section 67-429C sets out a procedure allowing a tribe to amend an existing compact to provide for gaming through these machines by filing with the Secretary of State a resolution "signifying [its] acceptance" of several conditions. *Id.* § 67-429C(2). Those conditions include limitations on the permissible number of machines, contributions of five percent of "annual net gaming revenue for the support of local educational programs and schools on or near the reservation[,]" and agreement "not to conduct gaming outside of Indian lands." *Id.* § 67-429C(1)(b)-(c).

The SBT followed a different course to offer gambling through tribal video gaming machines. Its class III compact with Idaho authorized "any gaming activity that the State of Idaho 'permits for any purpose by any person, organization, or entity,' as the phrase is interpreted in the context of the Indian Gaming Regulatory Act" (Doc. 8-7 at § 4.a) and further provided that "[i]n the event any other Indian tribe is permitted by compact or final court decision to conduct any Class III games in Idaho in addition to those games permitted by this Compact, this Compact shall be amended to permit the Tribes to conduct those additional games" (*id.* at § 24.d). The SBT compact allowed either or both parties to file an "initial declaratory judgment action" in United States district court to determine "what gaming the Tribes may conduct under the Act and what restrictions on the operations, if any, may be imposed by the State" (*id.* at § 5)—an issue over which the parties disagreed. *Compare id.* at § 3.q (SBT contended that it could "offer and regulate all forms of gaming except sports-better" because "[g]iven the range and scope of

gaming activities [under Idaho law], with an emphasis on a multi-faceted state-sponsored entity, the State of Idaho cannot establish that any gaming activity, properly regulated to ensure the integrity of the game and protect the gaming patron, contravenes the State of Idaho's public policy for gaming" and that "in light of traditional understandings of the context and legislative history of [IGRA], the State cannot establish that it has reasonably characterized the relevant state laws as completely prohibiting a distinct form of gaming"), *with id.* at § 3.o (Idaho contended that "the only tribal Class III gaming activities . . . legal in Idaho under federal law are those Class III gaming activities permitted by article 3, section 20 of the Idaho Constitution and not otherwise contrary to the criminal laws of . . . Idaho").

The SBT and Idaho filed separate but later consolidated declaratory judgment actions in 2001 before this Court.  Following passage of the Tribal Gaming Initiative and Secretarial approval of the modifications to the northern Tribes' compacts, the consolidated action's focus narrowed to whether the SBT compact, most particularly its most-favored-nation provision, allowed the SBT to offer gambling through tribal video gaming machines as identified in § 67-429B without compliance with the conditions specified in § 67-429C(1).  This Court said yes. Doc. 8-8 at 14-15 (reasoning that Section 4 of the compact encompassed the newly-authorized tribal video gaming machines since such gaming was being conducted by other tribes, and construing Section 24.d as "merely [an] administrative provision[] requiring the Tribe to serve upon the Idaho State Gaming Counsel a brief amendment clarifying that that Tribe is authorized to operate tribal video gaming machines").

The Ninth Circuit affirmed this Court's judgment but gave the compact a somewhat different reading.  *Idaho v. Shoshone-Bannock Tribes*, 465 F.3d 1095 (9th Cir. 2006) (Doc. 8-9). It construed Section 24.d as "leav[ing] no room for negotiation" because "it mandates an

amendment to permit one thing—the operation of the same games conducted by other tribes under their compacts." *Id.* at 1099.  The Court of Appeals rejected Idaho's position that Section 24.d required the SBT to adhere to the conditions contained in § 67-429C and accepted by the other Idaho tribes.  *Id.* at 1101.  The SBT thus was "entitled to a mandatory amendment of the Compact stating that [it is] authorized to conduct tribal video gaming." *Id.* at 1102.  The State did not contest the validity of the Tribal Gaming Initiative before either this Court or on appeal.

## II.    STATE COURT LITIGATION OVER THE VALIDITY OF THE TRIBAL GAMING INITIATIVE AND ITS LATER CODIFICATION

The Tribal Gaming Initiative and the resulting statutes, Idaho Code §§ 67-429B and -429C, have been the subject of three state court actions seeking their invalidation under Article III, Section 20 of the Idaho Constitution.   A pre-election challenge to the Tribal Gaming Initiative's constitutionality filed before the Idaho Supreme Court was dismissed on standing and ripeness grounds.  *In re Petition to Determine Constitutionality of Indian Gaming Initiative*, 137 Idaho 798, 53 P.3d 1217 (2002) (Doc. 8-4).  A post-election challenge also filed directly before the Supreme Court was dismissed in an unreported decision because the court lacked original jurisdiction.  *In re Petition to Determine Constitutionality of Idaho Code Sections 67-429B and 67-429C*, No. 29226 (Idaho S. Ct. June 2, 2003) (order dismissing petition), *reh'g denied* (Oct. 16, 2003).  Doc. 8-5, 8-6.  Neither Plaintiff was a named petitioner in those actions.

However, in March 2008 Plaintiffs filed an action in state district court attacking the constitutionality of §§ 67-429B and -429C.  *Knox v. State ex rel. Otter*, No. CV-2008-667 (Idaho 7th Jud. Dist., Bingham County).  They alleged residence near the Fort Hall Casino ("Casino"), a gaming facility operated by the SBT on the Fort Hall Indian Reservation.  Doc. 8-10 ¶ 8.a.  They claimed addiction to the "slot machine" gaming offered at the Casino and, additionally, that they "gambled almost exclusively [there] because of its very short distance from their respective

residences" and that, "[o]f all the different types of gambling available [there], [they] played only the slot machines." *Id.* ¶ 8.b & c.  Plaintiffs stated not only that they lost substantial amounts of money as a result of this gambling and suffered emotional distress but also that one of them was convicted of a crime related to his efforts to acquire gambling funds.  *Id.* ¶ 8.d & e.  Their complaint named as defendants three Idaho statewide executive officers in their official capacities: the Governor, Secretary of State, and Attorney General.  *Id.* ¶¶ 3-5.

Plaintiffs contended that "[i]f the defendants had originally upheld the Idaho Constitution and statutes prohibiting slot machines against the Tribal Gaming Initiative and Idaho Code §§ 67-429B and 67-429C, slot machines would not have been installed at Fort Hall Casino and neither Plaintiff would have suffered [such] harm." Doc. 8-10 ¶ 8.f.  They further alleged that

> [i]f this Court declares Proposition One and I.C. §§ 67-429B and 67-429C to be in violation of the Idaho Constitution, Fort Hall Casino will be forced to remove its slot machines, and such casino style gambling will be much less readily available to Plaintiffs.  This will make their recovery much easier and will prevent or minimize further harm to the Plaintiffs.

*Id.* at ¶ 8.g.  The complaint requested as relief a declaration that §§ 67-429B and -429C are unconstitutional, an injunction against their enforcement, and an order requiring defendants "to uphold and enforce Article III, § 20 of the Idaho Constitution and Idaho Code §§ 18-3808 and 18-3810." *Id.* ¶¶ 1-3.  After the state officials moved to dismiss under I.R.C.P. 12(b)(1), (6) and (7), Plaintiffs filed an amended complaint identical to the original except in three respects: the pleading's title was changed from "Complaint for Declaratory and Other Relief" to "Amended Complaint for Declaratory Relief[;]" the term "may" was substituted for "shall" in paragraph 8.g; and any requested relief other than a declaratory judgment "that Idaho Code §§ 67-429B and 67-429C are unconstitutional, unlawful, and invalid under the prohibition on gambling contained in

Article III, § 20 of the Idaho Constitution" was deleted.  Doc. 8-11.[2]

The state district court dismissed the amended complaint with prejudice on standing grounds in September 2008 after concluding that the requested relief would not redress Plaintiffs' alleged harm—*i.e.*, would not result in the termination of video machine gaming at the Casino. Doc. 8-12, 8-13.  The Idaho Supreme affirmed the district court judgment on the same basis. *Knox v. State ex rel. Otter*, *supra* (Doc. 8-14).[3]

## APPLICABLE RULE 12 STANDARDS

Governor Otter maintains this motion under Fed. R. Civ. P. 12(b)(1) and (7), but two settled exceptions to the basic Fed. R. Civ. P. 12(b)(6) standard—*i.e.*, a court "must accept the allegations in the plaintiff's complaint as true" (*Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999) and cannot go beyond "the contents of the complaint" (*Pelletier v. Fed. Home Loan Bank*, 968 F.2d 865, 872 n.11 (9th Cir. 1992))—are germane.  First, the Court of Appeals has recognized that "[a] court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment."  *Lee v. City of Los*

---

[2] The amended complaint in this matter alters the language of the state court amended complaint's paragraph 8.g with respect to the effect of a favorable judgment, alleging that

> [i]f this Court declares the Compacts to be in violation of IGRA and the Johnson Act, sets aside the Secretary's approval of the amendments to the Compacts, and grants the prayer for relief herein, Fort Hall Casino will likely be forced to remove its slot machines, and such gaming would be much less readily available to Plaintiffs, making their recovery much easier and preventing or minimizing further harm to Plaintiff of the kind set forth above.

Doc. 4 ¶ 28.g [*sic*].  Plaintiffs thus adopt a third formulation of a favorable judgment's impact.

[3] Responding in part to Plaintiffs' contention that the requested relief—a declaration of §§ 67-429B and -429C's unconstitutionality—would result necessarily in termination of the video machine gaming at the Casino, the court relied heavily on Ninth Circuit's decision and its claim preclusion implications in any later attempt by Idaho to preclude tribal video gaming at the Casino, since "whether or not the Tribes could conduct tribal video gaming was the issue to be decided in the lawsuit." 223 P.3d at 280.  The court also deemed it without "substantial likelihood" that federal "authorities would disregard the decision of the [Ninth Circuit] and seek to commence criminal prosecutions, even if the Plaintiffs prevailed in this action."  *Id.* at 280.

*Angeles*, 250 F.3d 668, 689 (9th Cir. 2002); *see Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994); *Mack v. S. Bay Beer Distrib., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Second, a court may consider documents referred to by the complaint when authenticity is not challenged. *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds*, *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).  In a Rule 12(b)(1) context, moreover, the *complainant* has the responsibility to establish the existence of federal court jurisdiction if disputed, and extrinsic evidence may be considered in resolving challenges under Rule 12(b)(1). *Colwell v. DHSS*, 558 F.3d 1112, 1121 (9th Cir. 2009).  Extrinsic evidence also may be considered in resolving Rule 12(b)(7) motions without conversion to a summary proceeding subject to Fed. R. Civ. P. 56.  *McShan v. Sherrill*, 283 F.2d 462, 464 (9th Cir. 1960).

## ARGUMENT

I.   **IGRA'S DETAILED REMEDIAL SCHEME FORECLOSES NOT ONLY IMPLYING A PRIVATE RIGHT OF ACTION TO ENFORCE ITS TERMS BUT ALSO PROSPECTIVE RELIEF UNDER *EX PARTE YOUNG***

Plaintiffs' claim against Governor Otter arises under IGRA.  Doc. 4 at ¶ 1.[4]  A private

---

[4] Reliance on the Johnson Act as a basis for a private right of action requires Plaintiffs' showing inapplicability of the exception in 25 U.S.C. § 2510(d)(6)—*i.e.*, establishing an IGRA violation by the Governor.  Plaintiffs thus ask to do indirectly that which they cannot do directly. Moreover, although it is theoretically possible for a criminal statute to create an implied private right of action, the Act's criminal-prosecution and forfeiture-proceeding enforcement scheme (15 U.S.C. §§ 1176, 1177) counsels against concluding that Congress intended to create such a right.  *E.g.*, *Chilkat Indian Vill. v. Johnson*, 870 F.2d 1469, 1472 (9th Cir. 1989) ("unless this congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist") (quoting *Thompson v. Thompson*, 484 U.S. 174, 179 (1988)) (internal quotation marks omitted).  There is, as well, no discernable basis for concluding that Congress intended to include individuals like Plaintiffs as "member[s] of the *special* class the statute was designed to protect." *Williams v. United Airlines, Inc.*, 500 F.3d 1019, 1023 (9th Cir. 2007) (emphasis added). Governor Otter, of course, falls outside the scope of an "agency" as defined in 5 U.S.C. § 701(b)(1), and thus no relief is available against him predicated on Idaho's status as a party to the SBT's and the northern Tribes' compacts or any alleged inconsistency between §§ 67-429B and -429C and IGRA.  *Johnson v. Rodriguez*, 943 F.2d 104, 109 n.5 (1st Cir. 1991).

right of action therefore must exist to enforce the allegedly violated provision, 25 U.S.C. § 2710(d)(1)(B), for federal question jurisdiction to attach. *E.g.*, *In re Digimarc Corp. Derivative Litigation*, 549 F.3d 1223, 1228-29 (9th Cir. 2008). Settled Ninth Circuit law, however, has foreclosed any general private right of action to enforce IGRA's provisions. *Hein v. Capitan Grande Band of Dieguendo Mission Indians*, 201 F.3d 1256, 1260 (9th Cir. 2000) (claim seeking recovery of tribal gaming revenue by a "splinter" group rejected because "where IGRA creates a private cause of action, it does so explicitly" and "[w]here a statute creates a comprehensive regulatory scheme and provides for particular remedies, courts should not expand the coverage of the statute"). The Ninth Circuit's understanding of IGRA finds ample support from other federal courts. *E.g.*, *In re Sac & Fox Tribe of Miss. in Iowa/Meskwaki Casino Litigation*, 340 F.3d 749, 766 (8th Cir. 2003); *Hartman v. Kickapoo Tribe Gaming Comm'n*, 319 F.3d 1230, 1232 (10th Cir. 2003); *Florida v. Seminole Tribe*, 181 F.3d 1237, 1249 (11th Cir. 1999); *Upstate Citizens for Equality v. Salazar*, No 5:08-CV-0633 (LEK/DEP), 2010 WL 827090, at *13 (N.D.N.Y. Mar. 4, 2010).

The availability of prospective relief against state officers under *Ex parte Young* in some instances where they are alleged to have violated federal law does not assist Plaintiffs. The Supreme Court rejected in *Seminole Tribe* reliance on *Young* for the purpose of exercising federal court jurisdiction by a tribe against a state governor to enforce IGRA's requirement that States negotiate in good faith over the terms of a tribal-state compact—a species of claim for which Congress created an *express* right of action in 25 U.S.C. § 2710(d)(7)(A)(i). The Court explained that such relief would be inconsistent with the "detailed remedial scheme" existing under IGRA:

> Where Congress has created a remedial scheme for the enforcement of a particular federal right, we have, in suits against federal officers, refused to supplement that scheme with one created by the judiciary. . . . Here, of course, the question is not whether a remedy should be created, but instead is whether the Eleventh Amendment bar should be lifted, as it was in *Ex parte Young,* in order to allow a suit against a state officer.   Nevertheless, we think that the same general principle applies: Therefore, where Congress has prescribed a detailed remedial scheme for the enforcement against a State of a statutorily created right, a court should hesitate before casting aside those limitations and permitting an action against a state officer based upon *Ex parte Young.*

517 U.S. at 74 (citation omitted).   No reason exists to reach a contrary result here where Congress has committed to the negotiation process "remedies for breach of contract" (25 U.S.C. § 2510(d)(3)(C)(v)) and otherwise has provided only an express right of action for States or tribes "to enjoin a class III gaming activity located on Indian lands and conducted in violation of any Tribal-State compact entered into under [25 U.S.C. § 2510(d)(3)] that is in effect" (*id.* § 2510(d)(7)(A)(ii)).

It is instead plain that the "detailed remedial scheme" in IGRA was not intended to allow *Young*-based relief against a State by an allegedly aggrieved state resident—a non-party to the compact—with respect to the purported illegality of a compact provision.   Congress committed to the involved State and tribe, with secretarial approval, the task of determining the scope of those class III "gaming activities on the Indian lands of the Indian tribe" (25 U.S.C. § 2710(d)(3)(A)) authorized under the compact and quite consciously limited the involvement of federal courts to certain compact controversies implicating IGRA-related limitations.   *See Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 933 (7th Cir.) (§ 2710(d)(7)(A)(ii) confers jurisdiction "over a suit to enjoin class III gaming whenever any clause in a Tribal-State compact is violated, but that jurisdiction is limited exists only when the alleged violation relates to a compact provision agreed upon pursuant to the IGRA negotiation process"), *cert. dismissed*, 129 S. Ct. 28 (2008).   Even there, however, *Seminole Tribe* teaches that *Young* relief would not be

available against a State if a tribe sought to sue state officers for prospective relief for a type of violation identified in § 2710(d)(7)(A)(ii) in the absence of the State's consent to suit. *E.g.*, *Fort Independence Cmty. v. California*, No. CIV. S-08-432 LKK/KJM, 2009 WL 5206797, at *20-*21 (E.D. Cal. Dec. 24, 2009) (applying *Coyote Valley Band of Pomo Indians v. California*, 331 F.3d 1094 (9th Cir. 2003)).[5]

## II. RELIEF DIRECTED TO THE VALIDITY OF THE SEVERAL COMPACTS CANNOT BE ENTERED IN THE ABSENCE OF THE TRIBES' JOINDER AS DEFENDANTS, AND THEIR JOINDER IS PRECLUDED BY TRIBAL SOVEREIGN IMMUNITY

---

[5] The decision in *Cabazon Band of Mission Indians v. Wilson*, 124 F.3d 1050 (9th Cir. 1997), which found federal question-based jurisdiction over a compact enforcement suit by the party tribe, has no relevance here because it did not involve an IGRA-violation claim and because the State's consent to suit existed. No less unhelpful is *Artichoke Joe's California Grand Casino v. Norton*, 353 F.3d 712 (9th Cir. 2003). There, the Court of Appeals rejected IGRA and equal protection claims brought against the federal and various state officials concerning the validity of a state constitution amendment that accorded tribes a monopoly over class III-types of gaming and Secretarial approval of compacts providing for the authorized gaming activity. It did not address the IGRA private right of action issue. The absence of such analysis is understandable since, without regard to the availability of an action under IGRA alone, the exercise of jurisdiction over the state officials for *Young*-grounded prospective relief existed by virtue of the alleged Fourteenth Amendment violation—an unquestionably appropriate claim under 42 U.S.C. § 1983. *See Artichoke Joe's Cal. Grand Casino v. Norton*, 216 F. Supp. 2d 1084, 1120 n.48 (E.D. Cal. 2002) (finding no necessity to address IGRA private-of-action issue because of claims raised under the APA and § 1983), *aff'd*, 353 F.3d 712 (9th Cir. 2003). Plaintiffs properly do not rely on § 1983 here because they are not intended beneficiaries of IGRA and because, as *Seminole* established, Congress created through the latter statute a highly structured mechanism for adjusting the rights of three sets of sovereigns over a sensitive issue of social policy while simultaneously furthering the fundamental objective of tribal economic development. 25 U.S.C. § 2701(4) & (5) (Congressional findings that "a principal goal of Federal Indian policy is to promote tribal economic development, tribal self-sufficiency, and strong tribal government" and that "Indian tribes have the exclusive right to regulate gaming activity on Indian lands if the gaming activity is not specifically prohibited by Federal law and is conducted within a State which does not, as a matter of criminal law and public policy, prohibit such gaming activity"). No rights "personal" to Plaintiffs are secured under IGRA. *See Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 112 (1989). To the extent that the *Artichoke Joe's* district court distinguished *Seminole Tribe* for *Young*-relief purposes with the summary observation that "Congress did not create a detailed remedial scheme to enforce section 2710(d)(1)" (216 F. Supp. 2d at 1109 n.34), it went astray. Congress in fact did so through the requirement of Secretarial review under § 2710(d)(8).

Federally-recognized Indian tribes are immune from suit by Idaho or its citizens in any court absent their consent or congressional abrogation of that immunity. *E.g.*, *Kiowa Tribe v. Mfg. Techns., Inc*., 523 U.S. 751, 754 (1998); *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 510 (1991). The complaint does not name the SBT or the northern Tribes as defendants and, in light of tribal sovereign immunity, could not do so even if Plaintiffs so desired. They nonetheless seek relief that, to be effective, must void at the least the SBT's right to operate tribal video gaming machines under its compact. Therefore, if this Court were to conclude that *Ex parte Young* relief is available against Governor Otter, the question whether such relief could be entered consistently with Fed. R. Civ. P 19's requirements in the Tribes' absence would arise. The answer to that question is clearly no.

A.      The Ninth Circuit has long applied a three-step test under Fed. R. Civ. P. 19, as configured prior to the 2007 amendments, to determine whether an absent party should be joined and, if so, whether the action should be permitted to continue when joinder is not feasible:

> Application of Rule 19 involves "three successive inquiries." [¶] First, the court must determine whether a nonparty should be joined under Rule 19(a). We and other courts use the term "necessary" to describe those "[p]ersons to [b]e [j]oined if [f]easible." . . . [¶] If an absentee is a necessary party under Rule 19(a), the second stage is for the court to determine whether it is feasible to order that the absentee be joined. . . . [¶] Finally, if joinder is not feasible, the court must determine at the third stage whether the case can proceed without the absentee, or whether the absentee is an "indispensable party" such that the action must be dismissed. . . . [because] upon consideration of the factors [in Rule 19(b)], it is determined that in his absence it would be preferable to dismiss the action, rather than to retain it.

*Wilbur v. Locke*, 423 F.3d 1101, 1111-12 (9th Cir. 2005) (citation omitted). That test remains uncompromised substantively under the rule's 2007 amendments. *See Republic of Philippines v. Pimentel*, 128 S. Ct. 2180, 2184 (2008) (amendments were "stylistic only" and left "unchanged" both "the substance and operation of the Rule both pre- and post-2007"). Rule 19 issues

frequently arise in connection with Indian tribes because of their immunity from suit.  *E.g.*, *Yashenko v. Harrah's NC Casino Co*., 446 F.3d 541, 551-53 (4th Cir. 2006); *American Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015 (9th Cir. 2002); *see generally* Matthew L.M. Fletcher, *The Comparative Rights of Indispensable Sovereigns*, 40 Gonz. L. Rev. 1 (2004-2005) (discussing application of Rule 19 requirements where rights of Indian tribes may be affected).

The analytical process for present purposes under Rule 19 additionally has been clarified, and arguably streamlined, in *Pimentel*.  There, the Supreme Court counseled: "[W]here sovereign immunity is asserted, and the claims of the sovereign are not frivolous, dismissal of the action *must* be ordered where there is a potential for injury to the interests of the absent sovereign." 129 S. Ct. at 2191 (emphasis supplied).  It thus faulted the Court of Appeals for ruling on the merits of a controversy where the Republic of the Philippines possessed a potential pecuniary interest but could not be joined and where its "claims . . . [we]re not frivolous." *Id.*  Applied here, the "not frivolous" test requires dismissal.  *Wilbur* and *American Greyhound* nonetheless are highly instructive even though decided without the benefit of *Pimentel*'s bright-line standard.

The *Wilbur* plaintiffs sought to enjoin the Washington governor and various state revenue department officials from implementing a cigarette tax compact with a tribe on the ground that arrangement would violate the Indian Commerce Clause and various federal statutes.  423 F.3d at 1104-05.  The Ninth Circuit had no difficulty concluding that the absent tribe was a necessary party, since it had a legally protected interest in the involved compact's benefits and since the plaintiffs were required to show "the illegality of the Compact in order to succeed on the merits of any of their claims." *Id.* at 1112.  Recognizing that the compact was contractual in nature, the court pointed to various decisions standing for the "'fundamental principle' that 'a party to a contract is necessary, and if not susceptible to joinder, indispensable to litigation seeking to

decimate that contract.'"   *Id.* at 1113.   The Ninth Circuit rejected the contention that state officials could represent the tribe's interests adequately, noting that "the Tribe and the state have been adversaries in disputes over the subject of the [compact] in the past (indeed, resolution of a 'long-standing disagreement' regarding cigarette taxation was one of the purposes recited in the Compact's preamble)" and that "the state owes the Tribe no trust duty that might ensure vindication of the Tribe's interest."   *Id.*   To accept the plaintiffs' adequate-representation argument, the court added, would negate the "general rule" that all parties to a contract—there the tribal-state compacts—are necessary parties to an action whose aim is to compromise a contract in some material respect. *Id.* at 1114.

The *Wilbur* court turned then to the Rule 19(b) considerations and held the tribe indispensable.  It noted the obvious impairment of the tribe's interest if the compact were determined to be unlawful and the impossibility of shaping protective provisions in a judgment given the fact that plaintiffs "want nothing less than nullification of the Compact."  423 F.3d at 1114.  The lack of any available shaping relief also carried with it the conclusion that an adequate judgment could not be entered because any decree would prejudice the tribe's interest in the compact's integrity.  Only the fourth consideration—"whether [the plaintiffs] will have an adequate remedy if the action is dismissed"—weighed against an indispensability finding, but the court observed that "we have 'regularly held that the tribal interest in immunity overcomes the lack of an alternative remedy or forum for the plaintiffs.'"  *Id.* at 1115.  Finally, it rejected the plaintiffs' reliance on the "public rights exception," reasoning that the doctrine does not apply where the litigation could "destroy the legal entitlements of the absent parties."  *Id.* (internal quotation marks omitted).  The plaintiffs' claim sought precisely that result, since "[t]he Tribe would lose valuable contractual benefits if the Compact was held invalid."

While *Wilbur* involved a tax agreement, *American Greyhound* arose from a suit filed by racetrack operators challenging a statute that empowered the Arizona governor to negotiate new, or to extend existing, class III gaming compacts with various tribes "[n]otwithstanding any other law."  The district court enjoined the governor from engaging in either action because, in its view, the state statute embodied an unlawful delegation of legislative power insofar as it exempted such compacts from compliance with other state statutory constraints on gambling.  *American Greyhound*, 146 F. Supp. 2d at 1066-67, 1069-72.  The district court further held that various types of "casino" gaming were unlawful under Arizona law.  *Id.* at 1063-66.

In reversing, the Court of Appeals did not reach the substantive issues because it concluded that the absent tribes were necessary and indispensable parties under Rule 19.  The Court of Appeals found that the tribes were necessary parties under Rule 19(a)(2)(i) because, as a practical matter, the relief entered by the lower court impeded the tribes' ability to protect their contracted-for compact interests.  305 F.3d at 1023.  The Court next addressed the Rule 19(b) factors and held that (1) the tribes would suffer "enormous" prejudice from the required compact terminations; (2) the prejudice could not be ameliorated through remedial shaping; (3) any judgment in the tribes' absence would not be adequate from the plaintiffs' perspective unless it compromised tribal interests; and (4) the tribes' immunity from suit took precedence over the unavailability of any other forum for the plaintiffs' grievance in the event of dismissal.  *Id.* at 1025.  It also found the plaintiffs' invocation of the public rights exception unavailing.  Although recognizing that "[t]he general subject of gaming may be of great public interest," the court deemed dispositive the fact that "[t]he plaintiffs sought th[e] injunction to avoid competitive harm to their own operations."  *Id.* at 1026.  "[T]he rights in issue between the plaintiffs in this case, the tribes and the state," in short, "are more private than public."  *Id.*

**B.**        *Wilbur* and *American Greyhound* leave no doubt about the necessary and indispensable party status of not only the SBT but also the northern Tribes. With respect to Rule 19(a), no legitimate question exists that Plaintiffs intend the declaratory relief sought—a judgment that the tribal video gaming machines operated by the SBT and the northern Tribes violate federal law and their compacts are void—has "as a practical matter" eliminating a right presently enjoyed by the tribes. The Court of Appeals in *American Greyhound* spoke directly to the "practical" prejudice attendant to Plaintiffs' position when it observed that "[a]lthough the district court enjoined only the execution of future compacts or the extension of existing ones, its order amounts to a declaratory judgment that the *present* gaming conducted by the tribes is unlawful" and that "[i]t is true that the tribes are not bound by this ruling under principles of res judicata or collateral estoppel because they are not parties, but their interests may well be affected *as a practical matter* by the judgment that its operations are illegal." 305 F.3d at 1024 (first emphasis added); *Cachil Dehe Band of Wintun Indians v. California*, 547 F.3d 962, 971-72 (9th Cir. 2008) (reasoning that absent tribes' "[i]nterest could be protected [for required-party status] if it actually 'arises from terms in bargained contracts[,]'"and distinguishing *American Greyhound*), *cert. denied*, 129 S. Ct. 1987 (2009). State courts have held similarly under joinder rules comparable to Rule 19. *Mudarri v. State*, 196 P.3d 153, 162 (Wash. App. Ct. 2008); *Srader v. Verant*, 964 P.2d 82, 90 (N.M. 1998).[6]

---

[6] The federal government's status as a defendant may protect adequately the interests of absent tribes (*e.g.*, *Washington v. Daley*, 173 F.3d 1158, 1167-68 (9th Cir. 1999)), but a court must ask "whether 'the interests of a present party to the suit are such that it will undoubtedly make all' of the absent party's arguments; whether the party is 'capable of and willing to make such arguments'; and whether the absent party would 'offer any necessary element to the proceedings' that the present parties would neglect" (*id.* at 1167). Settled precedent, as indicated by *Wilbur*, teaches that *all* parties to a challenged contract must be joined when its validity is attacked given their direct interest in the benefit of their bargain. 423 F.3d at 1113 (citing, *inter alia*, *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1157

Idaho, moreover, would be exposed to a "substantial risk of incurring . . . inconsistent obligations" within the reach of Rule 19(a)(1)(B)(i). Plaintiffs seek relief whose objective is to impose obligations on Governor Otter which conflict with the Ninth Circuit's judgment authorizing the SBT to add tribal video gaming machines to its IGRA-sanctioned class III gaming compact. That judgment, as the Idaho Supreme Court discussed, is binding on Idaho through claim-preclusion principles because the potential illegality of tribal gaming video machines was not, but could have been, raised in the earlier litigation. *E.g.*, *Sidney v. Zah*, 718 F.2d 1453, 1458 (9th Cir. 1983). The same risk of inconsistency exists as to the northern Tribes' compacts, which are valid under IGRA now and impose obligations on Idaho directly inconsistent with those Plaintiff seek through the requested declaratory relief.

Any reasonable assessment of the Rule 19(b) factors requires the conclusion that this action cannot proceed forward without the Tribes as parties. The threshold consideration—the possibility of prejudice to the absent party—has been discussed and strongly counsels indispensability. There additionally appear no "protective measures" that could mitigate this prejudice. Any meaningful judgment rendered in Plaintiffs' favor to address their alleged

---

(9th Cir. 2002)). Federal Defendants' interest, in contrast, lies in defending the validity of the *secretarial determination* under § 2710(d)(8). There is no assurance that they will attempt to defend the consistency of §§ 67-429B and -429C with Article III, Section 20; *e.g.*, Federal Defendants might choose to rely on the authorization itself as satisfying the "such gaming" requirement in 25 U.S.C. § 2510(d)(1)(B) for compact-approval purposes and refrain from addressing state constitution-based issues. *See Keweenaw Bay Indian Cmty. v. United States*, 136 F.3d 469, 472 (6th Cir. 1998); *Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546, 1557 (10th Cir. 1997). It is also hardly "undoubted[]" that Federal Defendants would take the same position as the Tribes with respect to the state law issue lying at the root of this controversy if required in this litigation or later to do so. There is, in other words, no assurance that they would make "all" arguments that the Tribes might. Last, Federal Defendants have *no* interest immediately at stake in the SBT-compact amendment, since Secretarial approval under § 2710(d)(8) was not sought. The unique facts here thus do not reflect the situation in *Artichoke Joe's* where the relevant federal and tribal interests were deemed "virtually identical" by the district court (216 F. Supp. 2d at 1119) and, in dicta, as "not adverse" by the Court of Appeals (353 F.3d at 719 n.10).

gambling addiction would require the SBT to cease operating tribal video gaming machines; something less leaves them in precisely the same *practical* position as they are now, *i.e.*, living in proximity to allegedly available "slot machine" gaming.  Here, absent at least the SBT's joinder, Plaintiffs simply cannot secure a judgment that redresses the pled injury-in-fact.  *See Yashenko*, 446 F.3d at 553 (absent joinder, "the Tribe would remain free to enforce the tribal preference policy on its reservation and through its contractual relations").  As is often the result where tribal immunity from suit is the basis for the infeasibility of joinder, Plaintiffs may have no alternative judicial forum.  *Cf. Pimentel*, 128 S. Ct. at 2194 (Rule 19(b) dismissal on sovereign immunity grounds has as a "contemplated" result that, "in some instances, that plaintiffs will be left without a forum for definitive resolution of their claims").  The lack of one, however, simply means that Plaintiffs must employ non-judicial means to address their asserted gambling compulsion.  The complaint, therefore, should be dismissed under Rule 12(b)(7).[7]

### CONCLUSION

Governor Otter's motion to dismiss should be granted.

Dated this 7th day of April 2010.

LAWRENCE G. WASDEN
Attorney General
STEVEN OLSON
MICHAEL S. GILMORE
Deputy Attorneys General
DAVID F. HENSLEY
Counsel to the Governor

By: /s/ Clay R. Smith
CLAY R. SMITH
Deputy Attorney General

---

[7] Plaintiffs advance a *sui generis* theory of injury to avoid a "generalized grievance."  The public rights exception clearly does not apply.  *See Lance v. Coffman*, 549 U.S. 437, 441-42 (2007) (*per curiam*).

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 7th day of April 2010, I electronically filed the foregoing document, with the U.S. District Court.  Notice will automatically be electronically mailed to the following individuals who are registered with the U.S. District Court CM/ECF System:

Curt R. Thomsen                    Email address:  cthomsen@custertel.net

T. Jason Wood                      Email address:  tjwood@thomsenstephenslaw.com


By: /s/ Clay R. Smith
CLAY R. SMITH